UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER HAYMAN,<br><br>   *Plaintiff*,<br><br>v.<br><br>BLDG METRO CAPITAL LLC et al.,<br><br>   *Defendants*. | Civil Action No. 22-2092 (TJK) |

**MEMORANDUM ORDER**

Proceeding pro se, Plaintiff sues a hotel and three of its employees—but his complaint provides almost no information about why. His later filings reveal that he used to work for that hotel, that he had trouble getting along with its employees, and that it fired him. Defendants move to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim, pointing to its overall lack of clarity. After considering all Plaintiff's filings under the lower standard applied to pro se litigants, the Court agrees that Plaintiff has not met his burden to establish its jurisdiction. So the Court will dismiss Plaintiff's complaint but allow him to file an amended complaint if he so chooses.

**I. Background**

Plaintiff sued three individuals and a company that owns a hotel. Plaintiff was once employed at the hotel, and the three individuals were his co-workers there. *See generally* ECF No. 1. Plaintiff's filings provide little information about his claims, and what information he provided is hard to follow. But because he appears pro se, the Court has attempted to "infer the claims made wherever possible," seeking to identify "all possible legal theories that could apply." *See Davis v. United States*, 973 F. Supp. 2d 23, 26 (D.D.C. 2014). The Court begins by summarizing the information in his filings.

The form Plaintiff used to generate his complaint directed him to specify whether he intended to invoke the Court's federal-question or diversity jurisdiction. *See* ECF No. 1 at 3. He specified federal-question jurisdiction. *Id.* But in the next section, he did not list any "specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case." *Id.* Later, he explained that his claim is for "[n]umerous violations of Employment Laws." *Id.* at 4. He listed some theories: "a.Negligence in hiring, b.Firing,c.Retention, d.Training and e.Supervision f.Employment Interference, g.Hostile Work Environment (intimidation) h. Wrongful Termination, i.Aiding and Abetting, j.Corruption and Civil Conspiracy [*sic*]." *Id.*

Plaintiff elaborated a bit on the first theory. He expressed that it is inappropriate to hire a dishonest person. *See* ECF No. 1 at 7. He also argued that at least one hotel employee, apparently defendant Kathy Tiong, previously committed fraud and other crimes. *See id.*

Plaintiff's complaint provided little information about Defendants' citizenship. He alleged that defendant BLDG Metro Capital LLC is incorporated in the District of Columbia and has its principal place of business in both New York and the District of Columbia. *See* ECF No. 1 at 4. But he said nothing about the citizenship of the individual defendants, listing what look like the addresses of the hotels for which they currently work. *See id.* at 2.

More than two months after filing his complaint, Plaintiff had not filed proof of service. *See* Min. Order of Sept. 21, 2022. So the Court notified him of his obligation to serve Defendants under Federal Rule of Civil Procedure 4(m) and to file proof of that service under Rule 4(l)(1). *Id.* The Court warned him that, if he did not do so by October 13, 2022, he would risk dismissal of the case. *Id.*

In response, Plaintiff filed three handwritten documents describing his service efforts. *See* ECF No. 2. But none of those documents mentioned Tiong. *See id.* So the Court dismissed her

2

from the case.  *See* Min. Order of Nov. 4, 2022; *see also, e.g.*, *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80 (D.D.C. 2006) (dismissing unserved defendants from the case).

Meanwhile, the remaining three defendants moved to dismiss.  *See* ECF No. 5.  They argue that Plaintiff has failed to allege a federal statute under which his claims arise, meaning the Court lacks subject-matter jurisdiction.  *See* ECF No. 5-1 at 1–2.  Alternatively, they say, the Court should dismiss Plaintiff's complaint for failing to state a claim because he has alleged no facts to support any conceivable claim, let alone the claims he mentioned.  *See id.* at 2–3.

Plaintiff filed four documents in response.  *See* ECF Nos. 9, 11–13.  Those documents contain more detail about his claims, but that information is still hard to understand.  Still, a few points come through.

Defendant BLDG Metro Capital LLC owns a hotel that employed Plaintiff in some capacity.  *See* ECF No. 1 at 1; ECF No. 9 at 2.  During Plaintiff's employment, defendants Emily Smith and Guirlyne Perpignand were managers.  *See* ECF No. 9 at 2.  Tiong was the overnight manager, although she has since left for another employer.  *See id.*; ECF No. 1 at 2.

Plaintiff does not believe Tiong was qualified for her role.  That is primarily because he thinks she has committed various crimes of moral turpitude, *see* ECF No. 1 at 7; ECF No. 9 at 3, 7, and has related personality flaws, *see, e.g.*, ECF No. 9 at 4; ECF No. 12 at 2.  In Plaintiff's view, Tiong performed her job poorly.  *See* ECF No. 13 at 2–3.  That behavior was foreseeable, he explains, because Defendants did not perform an adequate background check before hiring her.  *See* ECF No. 9 at 2–3.

Plaintiff and Tiong did not get along.  For example, Plaintiff reported her to management on "several instances" because he thought she "treated . . . guests inappropriately."  *See* ECF No. 12 at 2.  Tiong also once made a disparaging remark about men, which prompted an argument

3

between the two. *See* ECF No. 13 at 3. Plaintiff believes she was trying to induce him to quit, but he refused. *See* ECF No. 9 at 2.

Tiong, in turn, accused Plaintiff of wrongdoing. The heart of that accusation seems to be that Plaintiff gave room keys to someone without verifying their identity. *See* ECF No. 9 at 5–6. But it is possible she made other claims about Plaintiff's handling of confidential information. *Cf. id.* at 6. The extent of Plaintiff's efforts to portray Tiong as reflexively dishonest hints that she made further claims too. *Cf.* ECF No. 1 at 7; ECF No. 9 at 8; ECF No. 12 at 2; ECF No. 13 at 2. Plaintiff believes she was trying to get him fired. *See* ECF No. 9 at 2.

If that was Tiong's aim, she succeeded. In July 2019, five managers, including defendant Smith, confronted Plaintiff and fired him. *See* ECF No. 9 at 5. They cited the hotel's policy "on Confidential Information" and refused to hear his side of the story. *See id.* at 5–6. In paperwork, they listed the reason for the firing as Plaintiff's performance. *See id.* at 6. And they told him they could fire him "for anything or any reason or no reason at all." *Id.* at 5.

Plaintiff believes the real reason for his firing was "[a]nimus towards men and people of color." *See* ECF No. 9 at 5. Even when he brought evidence of Tiong's unfitness to Defendants, they did not take him seriously and refused to reconsider his firing. *See* ECF No. 12 at 2–3.

Notwithstanding the list of legal theories the Court recounted above, it is hard to make sense of the nature of Plaintiff's claims. In one of his filings, he provided these citations: "19 U.S.C. § 1592(a)(v)" (captioned "Negligent Hiring"), ECF No. 9 at 2; "19 U.S.C. § 1592(a)(v)" (captioned "Negligent Firing"), *id.* at 3; "§ 1402.11(1)(a)" (captioned "Negligent Retention"), *id.*; "§ 1592(a)(v)" (captioned "Negligent Supervision"), *id.*; "§ 7-231.26" (captioned "Negligent Misrepresentation"), *id.* at 4; "§ 2-381.04(a)(b) , § 2-1402.11(1)(a)" (captioned "Employment Interference," *id.*; "§ 22-2001" (captioned "Civil Conspiracy"), *id.* at 5; "Ann.§12-301, §32-1117"

(captioned "Wrongful Discharge/Termination"), *id.*; "§ 2-351.03" (captioned "Good Faith & Fair Dealing"), *id.*

## II.     Legal Standards

Defendants' motion relies on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), Plaintiff has the burden to establish the Court's subject-matter jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). In evaluating a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[ Plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted).

That is particularly true here because Plaintiff proceeds pro se; the Court must "liberally construe[ ]" his filings and hold him to a "less stringent standard." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But he still has the burden to prove subject-matter jurisdiction. *Bickford v. United States*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011). In evaluating whether he has met that burden, the Court may consider the allegations in his complaint, the undisputed facts in the record, and, if necessary, its resolution of disputed facts. *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

Under Rule 12(b)(6), Plaintiff's complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible if "it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quotation omitted). Again, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Id.* (quotation omitted). But it must disregard "a legal conclusion couched as a factual allegation." *Cason v. NFL*

*Players Ass'n*, 538 F. Supp. 3d 100, 109 (D.D.C. 2021) (quotation omitted).

In this respect, too, the Court must construe Plaintiff's complaint liberally because he proceeds pro se. *See Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017). And the Court must consider not only the facts in Plaintiff's complaint, but also those he presented in opposing Defendants' motion to dismiss. *See Watson v. D.C. Water & Sewer Auth.*, 249 F. Supp. 3d 462, 464 (D.D.C. 2017); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). Ultimately, though, a pro se plaintiff still must plead a plausible claim to avoid dismissal. *See Odutola v. Branch Banking & Tr. Co.*, 321 F. Supp. 3d 67, 73 (D.D.C. 2018).

## III.   Analysis

Plaintiff's complaint must be dismissed because he has not provided enough pertinent information to establish the Court's subject-matter jurisdiction. But it is possible he could amend his complaint to establish jurisdiction. So the Court will permit him to move for leave to file an amended complaint if he so chooses.

### A.   **Plaintiff Has Not Established this Court's Subject-Matter Jurisdiction**

Federal courts have "limited jurisdiction" and must presume unless a party shows otherwise that "a cause lies outside this limited jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The two most common sources of original jurisdiction for federal district courts are the federal-question-jurisdiction statute, 28 U.S.C. § 1331, and the diversity-jurisdiction statute, *id.* § 1332. As the Court explained above, Plaintiff purported to invoke the Court's federal-question jurisdiction—and not its diversity jurisdiction. *See* ECF No. 1 at 3. But he also cited mostly statutes and legal theories that, if they exist at all, appear to be drawn from the District of Columbia Code or from state common law, not federal law. *See id.*; ECF No. 9 at 2–5. Still, Plaintiff has not established the necessary elements for either form of jurisdiction.

1. **Diversity Jurisdiction**

Start with diversity jurisdiction. Federal diversity jurisdiction has two elements. The first is complete diversity of citizenship between the parties, as defined by 28 U.S.C. § 1332(a)(1)–(4). The second element is an amount "in controversy [that] exceeds . . . $75,000, exclusive of interest and costs." *Id.* § 1332(a).

Plaintiff provided inadequate information about the parties' citizenship for the Court to find complete diversity. Complete diversity of citizenship means that all plaintiffs are diverse from all defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Thus, to allege complete diversity, a plaintiff must "distinctly" allege the citizenship "of every party to the action." *Meng v. Schwartz*, 305 F. Supp. 2d 49, 55 (D.D.C. 2004). For purposes of diversity jurisdiction, a person is a "citizen of the State" in which he is domiciled. *See Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). But Plaintiff did not allege his own citizenship or the citizenship of any individual defendant. *See* ECF No. 1 at 3–4. Even if the addresses he provided in the complaint are the residence addresses of all individual parties (and for Defendants, that does not appear to be true), that does not suffice, because residency does not necessarily imply domicile, a part of which is an intent to remain for an unspecified or indeterminate time. *See Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006). That is a fatal pleading defect even for a pro se litigant. *See, e.g.*, *Humphries v. Newman*, No. 18-CV-2936 (JMC), 2022 WL 61257 at *6 (D.D.C. 2022).

Plaintiff also did not provide enough information about the amount in controversy. Pleading that element of diversity jurisdiction is not subject to a high bar. Even if a plaintiff's claimed sum is "disputed," all he must do is provide "evidence 'that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount.'" *See Griffith v. EduCap, Inc.*, No. 16-CV-1541 (DLF), 2019 WL 4737064, at *2 (D.D.C. Sept. 27, 2019) (quoting *Payne v. Gov't of D.C.*, 559 F.2d 809, 820 & n.59 (D.C. Cir. 1977)). But Plaintiff has said nothing about the amount

7

of damages he seeks. *See* ECF No. 1 at 5. That does not suffice. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194–95 (D.C. Cir. 1983).

### 2.     Federal-Question Jurisdiction

Plaintiff also has not established federal-question jurisdiction. Such jurisdiction is present only for "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, to establish federal-question jurisdiction, Plaintiff must "plead any claim that arises under federal law." *Coleman v. Toyota Motor Credit Corp.*, 109 F. Supp. 3d 4, 7 (D.D.C. 2015). Passing references to federal statutes that obviously do not provide him a cause of action will not do. *See id.* (dismissing a complaint for lack of federal-question jurisdiction when the plaintiff "refer[red] to" various federal statutes that could not possibly "amount[ ] to a cause of action here" (quoting *Theus v. Selene Fin. LLC*, 98 F. Supp. 3d 27–28 (D.D.C. 2015))).

The Court cannot be sure it has located most legal authorities Plaintiff intended to cite. The easiest to discern is 19 U.S.C. § 1592(a).[1] *See* ECF No. 9 at 2–3. But that statute cannot establish federal-question jurisdiction because Plaintiff's claims do not arise under it. Section 1592(a) forbids fraud in importing material into the United States—it was originally passed as part of a statute regulating import duties.[2] Overall, that section regulates enforcement proceedings for use by U.S. Customs and Border Protection, and so does not create a private cause of action. *Harris v. Dep't of Transp.*, No. 22-CV-2383 (TNM), 2023 WL 2477968, at *4 (D.D.C. Mar. 13, 2023). Thus, Plaintiff's references to 19 U.S.C. § 1592(a) do nothing to show that his claims arise under federal

---

[1] Plaintiff cited "19 U.S.C. § 1592(a)(v)," ECF No. 9 at 2–3, which does not exist, but the Court can reasonably infer his intent.

[2] *See* An Act To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes, Pub. L. No. 71-361, 46 Stat. 590, 750 (1930) (codified as amended at 19 U.S.C. § 1592).

law, and so they do not meet his burden to establish federal-question jurisdiction. *See Coleman*, 109 F. Supp. 3d at 7.

Plaintiff's remaining claims—as far as they can be understood to be rooted in any legal authority—appear to be grounded in state statutes or state common law. Although the District of Columbia is a federal district, *see* U.S. Const. art. I, § 8, cl. 17, its laws are treated as state laws and so claims brought under them "do not . . . raise a federal question." *See RGI Events & Pub. Rels., LLC v. Al Qurm Mgmt. Consultancy*, No. 18-CV-1828 (BAH), 2019 WL 935498, at *2 n.1 (D.D.C. Feb. 26, 2019). Neither do common-law claims. *See Alexander v. Lemonade, Inc.*, No. 23-CV-6 (CKK), 2023 WL 3092652, at *1 (D.D.C. Apr. 26, 2023). So most of Plaintiff's claims categorically cannot create federal-question jurisdiction.

Finally, it is conceivable that Plaintiff meant to assert claims under Title VII of the Civil Rights Act of 1964, a federal statute that regulates employment.[3] Title VII forbids, among other things, regulated employers' subjecting employees to a hostile work environment,[4] and altering

---

[3] The Court does not suggest that Plaintiff *could* assert such a claim even if he had so intended. A plaintiff must exhaust his administrative remedies before bringing a Title VII claim to federal court. *See Bruton-Barrett v. Gilead Scis.*, 640 F. Supp. 3d 152, 158 (D.D.C. 2022). Doing so means filing charges with the Equal Employment Opportunity Commission within, depending on the circumstances, either 180 or 300 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). Once a claim is filed, the Commission may bring a civil action. *See id.* § 2000e-5(f)(1). But if it declines to bring an action, or if it has not brought one within 180 days of the filing of the charge, it must notify the claimant that he can file a civil action. *See id.* After that notice, a claimant has 90 days to bring a case. *See id.* That "time limit is not jurisdictional, but rather functions like a statute of limitations, subject to waiver, estoppel, and equitable tolling." *Obaseki v. Fannie Mae*, 840 F. Supp. 2d 341, 344 (D.D.C. 2012). Plaintiff's allegations appear to rule out the possibility of a timely Title VII claim. He explains that BLDG Metro Capital fired him in July 2019. *See* ECF No. 9 at 5. And he filed his complaint in July 2022. *See* ECF No. 1. Thus, it is hard to see how any Title VII claim he may have had could fit within that timeline.

[4] *See generally Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) ("To prevail on a hostile work environment claim, a plaintiff must show that his employer subjected him to

their terms, conditions, or privileges of employment because of their race or sex. Plaintiff asserted similar theories, although he alleged very little factual support. *See* ECF No. 1 at 4 ("Hostile Work Environment"); ECF No. 9 at 5 (alleging "animus" based on race and sex).

But if Plaintiff intended to assert such claims, he did not meet his burden to show he intended to do so—even under the lower standard applied to pro se litigants. That is for two reasons. First, Plaintiff did not plead anything that points to Title VII. In *Davis*, for example, the court was able to infer a pro se plaintiff's intent to invoke Title VII because that plaintiff had pleaded that she filed a complaint with the Equal Employment Opportunity Commission. *See* 973 F. Supp. 2d at 29. The Court has no comparable indicator here. Second, Plaintiff's filings all but contradict the notion that he wishes to assert a Title VII claim. His allegations of discrimination and a hostile work environment all reference District of Columbia law, not federal law.[5]

State-law claims are, of course, not fungible with Title VII. And liberally construing Plaintiff's filings does not mean litigating his case for him and asserting claims he did not intend to assert. *See Dozier*, 702 F.2d at 1194 ("[A] pro se litigant must of course be given fair and equal treatment, [but] he cannot generally be permitted to shift the burden of litigating his case to the courts."). Because Plaintiff's filings do not so much as hint that he intended to assert claims that

---

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." (quotation omitted)).

[5] Plaintiff's reference to race and sex playing a role in his firing comes under the heading "Wrongful Discharge/Termination," which cites "§ 32-1117." *See* ECF No. 9 at 5. The legal authority most likely to be the intended target of that citation is D.C. Code § 32-1117, an inoperative provision of District of Columbia law captioned "Nondiscrimination." Plaintiff's reference to a hostile work environment appears only in his complaint, but he there associates it with "intimidation," *see* ECF No. 1 at 7, and his later filings contain a roughly similar claim for "Employment Interference," *see* ECF No. 9 at 4. For that claim, Plaintiff cites "§ 2-1402.11(1)(a)," which appears to refer to the codified District of Columbia Human Rights Act, D.C. Code § 2-1402.11. That statute forbids, among other things, conduct that creates a hostile work environment. *See* D.C. Code § 2-1402.11(c-2)(2)(A).

arise under federal law, he has not established federal-question jurisdiction.

\* \* \*

For all these reasons, Plaintiff has not met his burden to establish this Court's jurisdiction over his claims. Thus, the Court "must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

That dismissal is without prejudice because it is jurisdictional. *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020). But the Court also will not yet dismiss the case because it is possible that Plaintiff could establish jurisdiction. The Circuit has instructed courts to leave open the possibility of amendment unless they "determine[ ] the plaintiff could not possibly cure the deficiency by alleging new or additional facts." *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) (quotation omitted). As the Court has explained, Plaintiff could establish jurisdiction by pleading additional facts about the parties' citizenship and the amount in controversy or by asserting claims that arise under federal law. Thus, Plaintiff may seek leave to file an amended complaint according to the terms specified in the Court's order below.

## IV.   Conclusion and Order

For all the above reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss, ECF No. 5, is **GRANTED**. It is further

**ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. It is further

**ORDERED** that Plaintiff may move for leave to file an amended complaint by October 13, 2023. If Plaintiff does not so move by that date, the Court will dismiss the case. It is further

**ORDERED** that, if Plaintiff moves for leave to file an amended complaint, he shall comply with Federal Rule of Civil Procedure 8(a), the Local Civil Rules, and the Court's Standing Order. Plaintiff is advised that Federal Rule of Civil Procedure 8(a) requires "short and plain statement[s]"

establishing the Court's jurisdiction and his entitlement to relief.  Plaintiff is further advised that Local Rule 7(i) requires a motion for leave to file an amended complaint to "be accompanied by an original of the proposed pleading as amended."  Plaintiff is further advised that the Court's Standing Order requires "proposed amended pleadings [to] be accompanied by a redline comparison of the original and . . . proposed pleading."  *See* ECF No. 6 ¶ 7.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 13, 2023